## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
_____

| | | |
|---|---|---|
| PATRICK WARREN MATTHEWS, | ) | **CIVIL NO.** |
| | ) | |
| Petitioner, | ) | |
| vs. | ) | ACTION FOR FEDERAL HABEAS |
| | ) | CORPUS RELIEF FROM CONVICTION |
| BURL CAIN, Warden | ) | IN THE 22nd JUDICIAL DISTRICT |
| Louisiana State Penitentiary , | ) | COURT, PARISH OF ST. TAMMANY, |
| | ) | STATE OF LOUISIANA, NO.: 467460 "B" |
| Respondent. | ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT
## OF PETITION FOR WRIT OF HABEAS CORPUS
## <u>PURSUANT TO 28 U.S.C. §§ 2241 and 2254</u>

**COMES NOW**, Petitioner PATRICK WARREN MATTHEWS (hereinafter "Petitioner"), by and through his undersigned Counsel, H2 Law, LLC (Justin Caine Harrell, Esq., of counsel) and submits the following Memorandum in Support of his Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus by a Person in State Custody. In support thereof, Petitioner states as follows:

### <u>INTRODUCTION</u>

On February 12, 2010, Petitioner was sentenced to life without the benefit of parole, probation, or suspension of sentence after being convicted of (1) count Simple Burglary and two (2) counts Theft and after being adjudicated a fourth-time felony offender. Prior to receiving his life sentence, Petitioner had never spent a single day in the custody of the Louisiana Department of Corrections. He was 22 years old. *See **Exhibits 1-4***. In his present Petition for Writ of Habeas Corpus, Petitioner raises the following claims:

1. Petitioner's sentence was constitutionally excessive.

2. Petitioner's trial counsel was constitutionally ineffective.

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 2 of 25

3.  Petitioner's appellate counsel was constitutionally ineffective.

4.  The State engaged in prosecutorial misconduct.

## STATEMENT OF JURISDICTION

Jurisdiction is properly vested in the U.S. District Court of the Eastern District of Louisiana pursuant to 28 U.S.C. §§ 2241 and 2254.

## FACTUAL BACKGROUND AND PROCEDURAL POSTURE

In an unpublished opinion, the First Circuit gave the following recitation of the facts and history of this matter in State v. Matthews, no. 2010 KA 1040, 57 So. 3d 606 (La.App. 1 Cir. 2010):

> On or about April 16, 2009, the defendant and his co-perpetrator, Jason Blackwell, went to the residence of Leonard and Beatrice Sollberger, located on Bayou Liberty Road in Slidell, Louisiana. The Sollbergers' daughter, Kelsey Sollberger, was home alone at the time. After knocking on the door and ringing the doorbell, Kelsey opened the door. The defendant and Blackwell asked her about purchasing a vehicle on the property, and she informed them that it was not for sale. After Sollberger closed the door, she heard noises outside as the defendant and Blackwell stole a welding machine from the property before leaving. The welding machine belonged to Jerry Domecq and was being used by his son, Robert Brown, whom the Sollbergers had hired to add an elevator to their home. Demecq had purchased the welding machine for seven hundred fifty dollars. On the same date, the defendant and Blackwell took tools from a tool shed owned by Lester Nunez, Jr., located on Laurent Road in Slidell, Louisiana.
>
> The next morning, on or about April 17, Michelle Parker and her two sons were at their residence in Slidell when the defendant and Blackwell arrived and began ringing the doorbell, knocking on the door, and banging on the front windows of the home. Parker contacted her husband, Travis Parker, and the police. The defendant and Blackwell stole a generator from the back yard of the home before leaving the property. Mr. Parker had purchased the generator for approximately seven hundred fifty to eight hundred dollars. The victims were recovering and rebuilding after Hurricane Katrina at the time of the offenses. The victims' property was recovered and returned.

*Matthews*, 57 So.3d at *2-*4.

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 3 of 25

In his direct appeal Petitioner raised a single assignment of error, to wit: that the life sentence imposed was constitutionally excessive as Defendant had never been convicted of a crime of violence, his predicate offenses consisted of simple burglary convictions, and he had a substance abuse problem that has never been properly addressed. *Matthews*, 57 So. 3d at *4.

The First Circuit affirmed Petitioner's conviction on December 22, 2010. Petitioner sought a Writ of Certiorari from the Louisiana Supreme Court. The Supreme Court denied writs on December 2, 2011. *See State ex rel. Matthews v. State*, 76 So. 3d 1165 (La. 2011). Accordingly, Petitioner's conviction became final on or about March 1, 2012, upon the expiration of Petitioner's 90-day window to seek further review from the Supreme Court of the United States.

Petitioner's instant Application was submitted on February 20, 2013. *See **Exhibit 7***. Petitioner's Application alleged, *inter alia*, that Petitioner's sentence was constitutionally excessive, that Petitioner's trial counsel was constitutionally ineffective, that Petitioner's appellate counsel was constitutionally ineffective, and that the State engaged in prosecutorial misconduct.

On March 18, 2013, the trial court issued an order directing the State to respond. On or about August 15, 2013, Petitioner moved to deem the matter conceded due to the State's failure to abide by this Court's directives. Thereafter, on August 22, 2013, Respondent submitted its Answer. *See **Exhibit 8***. Petitioner submitted a Traverse on September 12, 2013. *See **Exhibit 9.***

On or about November 25, 2013, Petitioner received, for the first time, notice of a ruling denying Petitioner's Application. The Judgment included a November 18, 2013 cover-letter from Deputy Clerk Karen C. Guzzardo. *See **Exhibit 10***. However, the annexed judgment bore the date of September 16, 2013—more than sixty (60) days before a certified copy of the judgment had been presented to Petitioner. That same day, November 25, 2013, Petitioner submitted a Notice

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 4 of 25

of Intent to Seek Writs and requested an additional thirty (30) days to submit his application to this Court. Petitioner additionally sought "clarification of the judgment date or of the delay in notifying Petitioner of the Judgment so that Petitioner can explicate for the First Circuit that he delay in filing writs was through no fault of his own or of the undersigned." The trial court granted Petitioner's Motion without explanation of the Court's two-month delay and provided Petitioner through January 9, 2014 to submit the instant Application for Writs.

Petitioner submitted his Application for Remedial Writs on January 6, 2014. The First Circuit denied writs without a written opinion on April 8, 2014. *See Exhibit 11*. Petitioner timely sought the Writ of Certiorari from the Louisiana Supreme Court on May 7, 2014. The Louisiana Supreme Court denied writs on February 6, 2015 (Johnson, C.J. dissenting).

Applicants seeking Federal Habeas relief under 28 U.S.C. § 2241 *et seq.* are required to exhaust all claims in state court prior to requesting federal collateral relief. *Mercandel v. Cain* 179 F.3d 271, 275 (5th Cir. 1999). "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Armstead v. Maggio*, 720 F.2d 894, 896 (5th Cir. 1983). Habeas claims can be exhausted for §2254 purposes during either direct appeal or state post-conviction review. *Garner v. Cain*, 99-3272 "G," 2000 U.S. Dist. LEXIS 6451 (E.D. La. May 1, 2000) (finding issued raised by petitioner on direct appeal "properly exhausted and ripe for habeas review.") Petitioner's Petition for Post-Conviction Relief and his subsequent requests for Remedial and/or Supervisory Writs fairly presented the facts and law of Petitioner's Federal Habeas claims enumerated herein. Although exhaustion inquiries are fact-specific, "as a general rule dismissal is not required when evidence presented for the first time in a habeas proceeding supplements, but does not

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 5 of 25

fundamentally alter, the claim presented to the state courts." *Anderson v. Johnson,* 338 F.3d 382, 386 (5th Cir. 2003).

Petitioner's claims were adjudicated on the merits before the 22nd Judicial District Court notwithstanding that the court failed or refused to grant Petitioner's request for an evidentiary hearing. The phrase "adjudicated on the merits" as it appears in 28 U.S.C. § 2254 "does not require that state have conducted evidentiary hearing, or indeed, any particular kind of hearing; state has 'adjudicated' petitioner's constitutional claim 'on the merits' for purposes of 28 USCS § 2254(d) when it has decided petitioner's right to post-conviction relief on basis of substance of constitutional claim advanced, rather than denying the claim on basis of procedural or another rule precluding state court review of merits." *See generally*, *Lambert v. Blodgett* 393 F3d 943, 965-966 (9th Cir. 2004). As will be noted, *infra*, the 22nd Judicial District Court's, and subsequent appellate courts' summary disposition of Petitioner's Post-Conviction Application represents both a departure from clearly established Federal law, as determined by the Supreme Court of the United States and an unreasonable determination of the facts in light of the evidence presented in the State court proceedings

This Application for Federal Habeas Corpus pursuant to 28 U.S.C. §§ 2241 and 2254 timely follows.

## <u>LAW AND ARGUMENT</u>

The First Circuit erred in denying Petitioner's request for the issuance of writs of review to the 22nd Judicial District Court as Petitioner was entitled to relief on post-conviction based upon the grossly excessive life sentence he received; the ineffectiveness of trial counsel who failed to preserve trial objections, permitted the admission of hearsay evidence, and failed to present any mitigating evidence at sentencing; and the ineffectiveness of appellate counsel, who provided

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 6 of 25

Petitioner with only lackluster representation and failed to adequately explore the record for appealable issues; and prosecutorial misconduct designed to wrest a conviction at all costs.

    A. Timeliness

    Title 28 U.S.C. § 2244 provides a one-year time limit for the filing of an application for a Writ of Habeas Corpus with the Federal Courts.  28 U.S.C. § 2244(d)(1). The limitation period commences from the latest of:

> *(A) The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;*
>
> (B) The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Ibid*. (emphasis added).  Moreover, "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

    The one-year time limit imposed by §2244(d)(1)(A) begins to commence on "the date on which the judgment became final by the conclusion of direct review." A state prisoner's conviction becomes "final" for purposes of § 2244, ninety (90) days after the judgment is entered, when the time to file a petition for writ of certiorari with the U.S. Supreme Court has expired. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003). A pending state habeas or post-conviction proceeding tolls the statute of limitations created by §2244(d)(1). *Ybanez v.*

Case 2:15-cv-00430-NJB   Document 1-1   Filed 02/10/15   Page 7 of 25

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 7 of 25

*Johnson*, 204 F.3d 645, 646 (5th Cir. 2000). "[A] state application is 'pending' during the intervals between the state court's disposition of a state habeas petition and the petitioner's timely filing of a petition for review at the next level." *Dixon v. Cain*, 316 F.3d 553, 556 (5th Cir. 2003).

In the instant case, Petitioner's conviction therefore became final on or about March 1, 2012, ninety (90) days after the Louisiana Supreme Court's December 2, 2011 denial of writs and upon the expiration of Petitioner's time limit to seek review from the U.S. Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003); *see also Causey v. Cain*, 450 F.3d 601, 606 (5th Cir. 2003) ("[A] conviction becomes final at the conclusion of direct review or when the time for such review has expired, as specified by AEDPA, regardless of when state law says finality occurs.") Petitioner filed his Application for Post-Conviction Relief on February 20, 2012 after a lapse of 356 days, leaving a remainder of 9 days on Petitioner's federal clock. Petitioner timely sought review of the trial court's denial of his Application for Writs from the First Circuit Court of Appeal and the Louisiana Supreme Court. The Louisiana Supreme Court denied writs on February 6, 2015 and Petitioner's federal clock resumed immediately thereafter on February 7, 2015, yielding an expiration of Petitioner's time on or about February 16, 2015 (Johnson, C.J. dissenting). Therefore, Petitioner's instant Petition is timely filed.

  B.  AEDPA Standard of Review

Questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), while pure questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir.2000). The state court's decision is contrary to federal law within the meaning of § 2254(d)(1) if the state court applies a rule contradicting the governing law set forth in the Supreme Court's cases, or the state court "confronts a set of facts that are materially

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 8 of 25

indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Ibid*.; *see also Williams v. Taylor*, 529 U.S. 362, 405-06; 120 S.Ct. 1495; 146 L.Ed.2d 389 (2000). A state court's factual findings constitute "an unreasonable application of clearly established" Supreme Court precedent if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08. The inquiry into the issue of "unreasonableness" is objective. *Ibid*. at 409-10. A state court's incorrect application of clearly established Supreme Court precedent is not enough to warrant federal habeas relief — the application must also be unreasonable. *Ibid*. at 410-12.

C.   Petitioner's Life Sentence is Constitutionally Excessive

On federal habeas review, claims of excessive sentence and other constitutional challenges to a sentence present a question of law. *Every v. Cain*, No. 12-2390, 2014 U.S. Dist. LEXIS 56562 (E.D. La. Apr. 4, 2014); *Davis v. Cain*, 44 F. Supp.2d 792, 798 (E.D. La.1999); *Jones v. Kaylo*, No. 99-0567, 1999 U.S. Dist. LEXIS 11456 (E.D. La. July 26, 1999) (Berrigan, J.) ("The question of excessive sentence is purely a question of law….")

The Eighth Amendment of the United States Constitution protects against cruel and excessive punishment. *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290-291, 50 L. Ed. 2d 251 (1976). Sentences within the statutory limits are entitled to a presumption of constitutionality. *Nicks v. Cain*, No. 04-0519, 2005 U.S. Dist. LEXIS 13404 (E.D. La. June 30, 2005). However, no sentence is *per se* constitutional. *Solem v. Helm*, 463 U.S. 277, 290, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983) ("No criminal penalty is *per se* constitutional; a single day in prison may be unconstitutional in some circumstances.") A federal court considering a habeas petition will not upset a state sentence within the statutory limits unless the sentence is so

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 9 of 25

disproportionate to the offense as to be completely arbitrary and shocking. *Simmons v. Cain*, No. 06-2130, 2008 U.S. Dist. LEXIS 118308 (E.D. La. May 20, 2008); *citing Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975). The "burden is on the defendant to rebut the presumption of constitutionality by showing that he is exceptional." *Ibid*.

Petitioner was 22 years old when he was arrested and incarcerated in relation to the instant offense. He was adjudicated a fifth-time felony offender. However, none of his previous convictions were for crimes of violence, sexual offenses, or violations of the Louisiana Controlled Dangerous Substance Act. Moreover, Petitioner's 2007 conviction for Simple Burglary in case no. 411264 arose out of the same series of events as Petitioner pleaded guilty to in 2005. Additionally, Petitioner's 2007 conviction was proscribed from use in multiple offender proceedings as the date of the offense, May 4, 2005 preceded the date of Petitioner's first felony convictions in October 2005. *See State v. London*, 28 So. 3d 1150, 1152 (La.App. 5 Cir. 2009) ("the Louisiana Supreme Court held that from its inception, LSA-R.S. 15:529.1 has required that 'for sentence enhancement purposes, the *subsequent felony* must be committed *after* the *predicate conviction* or convictions [emphasis added].'") Consequently, Petitioner's adjudication as a fifth-time felony offender is technically in error.

Even more startling, prior to receiving the instant life Sentence Petitioner had never spent a single day in the custody of the Louisiana Department of Corrections. Petitioner's first three (3) convictions were obtained, via plea, on or about October 13, 2005 in the 22nd Judicial District Court in case nos. 398389, 399405, and 400076. Case nos. 398389 and 399405 were for Simple Burglary; case no. 400076 was for Simple Burglary and Simple Battery, a misdemeanor. Petitioner was just 17 years old. Petitioner received a five (5) year sentence, suspended and two (2) years supervised probation. Thereafter, on or about November 15, 2007, Petitioner pleaded

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 10 of 25

guilty to one (1) count Simple Burglary in case no. 411264 for a May 4, 2005 offense and received another two (2) years of probation, concurrent with the sentence he received in 2005.

This represents the sum total of Petitioner's criminal history. Four (4) convictions for Simple Burglary, two (2) pleas; two (2) *Boykin* colloquies; two (2) sentences: the first for five (5) years suspended; the second for two (2) years' probation. From this, Petitioner's punishment was increased exponentially from a suspended sentence and active probation to a life sentence at hard labor in a maximum security prison foreclosing all possibility of hope, redemption, or freedom. Not only does Petitioner's sentence—a Life Sentence for Simple Burglary—shock the conscious, the dearth of serious or even earnest attempts to rectify Petitioner's conduct and the unconscionable increase of Petitioner's sentences from "slap on the wrist" probation to arguably the most severe penalty that can be consecrated in a Louisiana court of law must shock the conscience of every sober-minded person. It is anathema of every standard or our redemptive system of law and punishment, which, while recognizing increasing penalties for repeated offense, must also seek to ratchet up penalties in the hope of imparting upon the convicted the severity of their crimes and wresting from them obedience to the rule of law.

As Justice Stewart was quick to note "even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold." *Robinson v. California*, 370 U.S. 660, 667, 8 L. Ed. 2d 758, 82 S. Ct. 1417 (1962). Petitioner's conviction was a proverbial pull of the rug out from underneath one's feet. There was no graduated increase in his sentence; no opportunity to redeem a 22 year old man with an admitted drug addiction who was still too young to rent a car.

Petitioner concedes that his life sentence is statutorily-approved pursuant to La. R.S. 15:529.1. However, Petitioner avers that a life sentence meted out to a non-violent offender with

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 11 of 25

no history of drug arrests or convictions forecloses all possibility of hope and rehabilitation and is a sentence that must shock the conscience of any reasonable citizen and entitle Petitioner to the issuance of the writ of habeas corpus.

   D.  Petitioner's Trial Counsel was Constitutionally Ineffective

   A claim of ineffectiveness of counsel is assessed by the two-part "Strickland test," espoused by *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 67 (1984). The defendant must first show that counsel's performance was deficient. This requires a showing that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment of the U.S. Constitution." *Strickland*, 466 U.S. at 686. Next, the complainant must show that the deficient performance prejudiced his or her defense. This can be accomplished upon a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Ibid*. Where an alleged error is within the ambit of trial strategy it cannot be relied upon to establish ineffectiveness of counsel. *See generally*, *Michel v. Louisiana*, 350 U.S. 91, 101; 100 L. Ed. 83; 76 S. Ct. 158 (1955). Moreover, because of the inherent difficulties in assessing trial counsel's conduct retroactively, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Accordingly, to carry his burden, a defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ibid*. While judicial scrutiny must be "highly deferential," deference does not preclude relief. *Miller-El v. Cockrell*, 537 U.S. 322, 340; 123 S. Ct. 1029; 154 L. Ed. 2d 931 (2003).

   In the instant case, counsel's errors were severe and pervasive and robbed Petitioner of the constitutionally effective defense of which the U.S. and Louisiana Constitutions guarantee him

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 12 of 25

and there is a reasonable probability that but for counsel's errors, the result of the proceedings

would have been different.

> a.   *Failure to lodge objection to the improper "impeachment" of Jason*
> *Blackwell and the admission of hearsay evidence*

During the State's case-in-chief, Petitioner's one-time co-defendant Jason Blackwell testified

that he acted alone on the night of the alleged offenses charged against Petitioner:

> Q: Let me start asking you questions about the crimes that you committee back on
> the dates of April 16th and April 17th. Do you remember committing crimes on
> those dates?
>
> A: Yes.
>
> Q: And when you committed those crimes, were some of those crimes, did you
> commit by yourself?
>
> A: Yes.
>
> Q: Did some of those crimes, did you commit them with other people?
>
> A: Not to my knowledge. Not to my memory.
>
> Q: So you're saying that every crimes you committed was by yourself?
>
> A: Yes, sir.

*See* **Exhibit 5**.

Faced with the exculpatory testimony of the State's own witness, which the State had not

anticipated, ADA Bruce Dearing acted quickly to cure the possible damage done to the State's

case:

> Q: Do you remember on April 17th after you were arrested eventually going to the
> law enforcement center and sitting down with Detective Lucia and turning on
> a record and you answered his questions?
>
> A: Yes, sir.

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 13 of 25

Q: Do you remember in the course of that statement that you laid out the various crimes that you committed that day and the day before and you were very specific as to which ones you did alone and which ones Patrick Matthews committed with you?

A: Yes, sir. I remember from yesterday.

Q: And I'm going to ask you to tell me, I'm going to play a portion of the tape and I'm going to stop it and ask if you recognize the voices.

(AT THIS TIME THE CD WAS PLAYED AND PAUSED FOR THE JURY.)

*   *   *   *   *   *

Q: And do you remember rendering a statement to that detective back on April 17, 2009?

A: Yes.

Q: Did that statement that you gave, did it relate to the charges that were later filed against you?

A: Yes.

Q: I'm going to ask you to listen to a portion.

(AT THIS TIME THE CD WAS RESUMED AND THEN PAUSED.)

*   *   *   *   *   *

Q: You just heard your own voice say that your friend, and you describe your friend as being Patrick Matthews, that your friend came up with the idea to ask if the car in the driveway was for sale, you hear your voice just say that?

A: Yes.

Q: And now you're claiming you have no recollection of that?

A: I just don't remember. I don't remember that.

(AT THIS TIME THE CD WAS RESUMED AND THEN PAUSED.)

*Ibid.*

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 14 of 25

The State went on to play the entirety of Mr. Blackwell's April 17, 2009 statement to law enforcement in five (5) additional installments with no objection from defense counsel other than to request comments relating to Petitioner's drug use to be excised from the audio. *Ibid*. There was simply no basis for the introduction of these hearsay statements.

In denying this claim on state collateral attack, the trial court held that such prior inconsistent statements were properly admitted, the jury "instructed regarding the requirement of corroborating evidence," and "[t]he issue…thoroughly argued to the jury by the prosecutor." *See Exhibit 10*. As for defense counsel's performance, the trial court noted that "[n]o objection was made to the admission of these statements during cross-examination." *Ibid*. The Court's judgment and reasoning represent a departure from clearly established Federal law, as determined by the Supreme Court of the United States.

Federal courts sitting in habeas review do not review a state court's application of state evidence law. *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998). However, "regardless of how a state court applies state evidence rules, a federal habeas court has an independent duty to determine whether that application violates the Constitution." *Jones v. Cain*, 600 F.3d 527, 536 (5th Cir. La. 2010); *citing Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); *see also Slovik v. Yates*, 556 F.3d 747, 755 (9th Cir. 2009) (holding that a state court's decision based on state evidence law was nonetheless an objectively unreasonable application of federal law). Petitioner does not attack, *per se*, the trial court's ruling at trial or on post-conviction as it regards the evidence itself, but whether the admission of the evidence violated Petitioner's constitutional rights. *Jones v. Cain*, 601 F. Supp. 2d 769 (E.D. La. 2009) (reviewing admission of evidence to determine whether the state court's application of state evidence rules violated the petitioner's constitutional rights.)

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 15 of 25

Hearsay is roundly defined as a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. Code Evid. Ann. art. 801(C); *cf* Fed. R. Evid. Rule 801. Hearsay is not admissible unless an exception applies as provided by the Federal Rules of Evidence, other rules adopted by the Supreme Court, or statute. *United States v. Bishop*, 264 F.3d 535, 549 (5th Cir. 2001). Louisiana permits the use of prior inconsistent statements for purposes of attacking a witness' credibility. *State ex rel. K.M.,* 146 So. 3d 865 (La. App. 4 Cir. 2014); *citing* La. C.E. art. 607(D)(2). However, neither the Louisiana nor the United States Constitution can tolerate the use of impeachment as a subterfuge for the admission of substantive testimony. "To use a prior inconsistent statement in that manner exceeds the scope of impeachment, and is an attempt to use hearsay evidence for substantive purposes. We do not believe that the rules of evidence espouse such a revolutionary approach to circumvent the traditional principles of hearsay." *Whitehurst v. Wright*, 592 F.2d 834, 840 (5th Cir. 1979); *United States v. Kane*, 944 F.2d 1406 (7th Cir. 1991) ("Impeachment of one's own witness cannot be permitted where employed as a mere subterfuge to present to the jury evidence not otherwise admissible"); *United States v. Peterman*, 841 F.2d 1474, 1479 (10th Cir. 1988) (holding that government may not "use impeachment as a guise for submitting to the jury substantive evidence that is otherwise unavailable"); *see also e.g., State v. Cousin*, 710 So. 2d 1065 (La. 1998) ("Otherwise, prior inconsistent statements…cannot be used to divulge the content of the prior statement for the purpose of inviting the jury to believe the content of the statement.")

Where, as here, the State calls a witness who gave a prior statement favorable to the State's case, but has now grown recalcitrant or forgetful, and where the State may offer prior inconsistent statements only to impeach the witness. In Petitioner's case, the extensive replay of

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 16 of 25

seven (7) excerpts of the witness' audio-tape statement to police authorities containing allegedly inculpatory statement was a significant misuse of prosecutorial authority clearly aimed at admitted substantive evidence of Petitioner's guilt. Moreover, such misconduct was not without substantial prejudice. Absent the use of Mr. Blackwell's testimonial statement to police, the weight and strength of the untainted evidence presented in Petitioner's case was underwhelming.

Counsel's failure to object or otherwise prevent the egregious violence done to his client's due process and confrontation rights was indefensible. No "strategy" could allow a defense attorney to sit idly by while substantive evidence of his client's purported guilt was paraded before a jury under the ephemeral guise of "impeachment." The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee. *Holloway v. Arkansas*, 435 U.S. 475, 489, 98 S. Ct. 1173, 1181, 55 L. Ed. 2d 426 (1978). In the instant case, half of the so-called impeachment was played in response to the witness' fractured memory; the other half was not even passingly invited by the witness but appears to simply have been admitted by prosecutorial fiat and without objection by the one person equipped to bring the travesty to a stop: Petitioner's trial counsel.

Consequently, Petitioner is entitled to issuance of the writ of habeas corpus.

b.      *Failure to object to remarks regarding Hurricane Katrina*

During its opening, closing, and case-in-chief the State made several highly inflammatory remarks relative to Hurricane Katrina. These remarks were calculated to engender prejudice against Petitioner by provoking a higher degree of sympathy for the alleged victims and attributing an enhanced malevolence to Petitioner. At opening, the State described its witnesses as follows:

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 17 of 25

> And you're going to learn that [the victims] just as it is true of many of us in the parish, have had their lives turned upside down as a result of Hurricane Katrina…three of them live in the Bayou Liberty area of Slidell, an area of Slidell, an area that was impacted severely by flood waters as a result of Hurricane Katrina, and that since that date they have been slowly piecing their lives back together.

*See* **Exhibit 6**. The State further described the Sollberger resident—where welding equipment was purportedly purloined—as "a home that had to be rebuilt as a result of Katrina." *Ibid*. When describing Lester Nunez—who lost power tools—the State noted that "Lester was, out of the people in all of this, was impacted the hardest by [Hurricane] Katrina." *Ibid*.

The State's numerous references to Katrina were not limited to opening statement either. In its case-in-chief, the State questioned Ms. Michelle Parker thusly:

> Q: And I don't want to dwell on it, but did Hurricane Katrina have any effect on your residence?
>
> A: Yes.
>
> Q: Have you and your husband been spending your time since piecing back your life?
>
> A: Yes—we had to rebuild our whole house.

*Ibid*. In addition, when Mr. Nunez was called to testify the following *tete-a-tete* took place:

> Q: Now when you say you're "working in my house" is that just renovations or is that what happened to your house?
>
> A: Because of [Hurricane] Katrina.
>
> Q: What sort of damage did Katrina do to your house?
>
> A: I had three pine trees through it. It shut my central hearing down through the season. I have seven foot [sic] of water.
>
> Q: At the time that Katrina invaded this area, was your house elevated off the ground or was it a slab house?
>
> A: No, it was off the ground but not very high.

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 18 of 25

Q: If I understood you seven feet of water entered your house?

A: Yes. It was about twelve in my yard.

> \* \* \* \* \* \*

Q: It sounds even though we're a little but more than four years post-Katrina, like this is still an ongoing ordeal for you?

A: Yes.

*Ibid*. Similarly, members of the Sollberg family testified gratuitously regarding the ravages of

Hurricane Katrina.

Q: The house that you have at that address, was it impacted at all by [Hurricane] Katrina?

A: Yes. The one that's there currently is new since we built it since Katrina.

Q: Okay. What happened to the house you were living in at that address at the time of Katrina?

A: It flooded during Katrina and [was] knocked it off its foundation. We demolished it.

*Ibid*. Kelsey Sollberger, the couple's daughter testified:

Q: How long have you lived at that address?

A: All my life.

Q: And obviously that means you were living there back on August 29, 2005?

A: Yes.

Q: The day we were visited by Hurricane Katrina?

A: Yes.

Q: Did the storm have an effect on you and your family's house?

A: Yes.

Q: Have you all since had to build a brand new home on that piece of property?

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 19 of 25

A: Yes, sir.

*Ibid.*

At the closing arguments, the State returned to this motif:

This is basically three cases rolled into one. We have three families who were victims of crime back on April 16 and April 17 of this year, all of which, they all live in the Bayou Liberty area of our parish. They've all endured their hardships, and that isn't really relevant to the guilt of innocence of the defendant, I will agree with that, but it just shows you how horrible we can be at times. And unfortunately, there are people out there that take advantage of that…. And here we've got an example of one of those people. Patrick Matthews.

*Ibid.*

In the last reasoned judgment on state collateral attack, the trial court concluded that Petitioner could not have suffered untoward or undue prejudice because "[t]hese were true facts." *See Exhibit 10*. In other words, inflammatory remarks are not prejudicial when they are true even where such remarks serve no greater purpose than to inflame sentiments and prejudice a 22-year old non-violent offender who, as a result, now sits in jail for the remainder of his life. The state court's ruling represents both a departure from clearly established Federal law.

A prosecutor's remarks can be so prejudicial or inflammatory as to render a defendant's trial a violation of the Due Process clause. *Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. Tex. 1987)("it is our duty to determine whether those statements also were "so prejudicial that . . . the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment"); *citing Whittington v. Estelle*, 704 F.2d 1418, 1421 (5th Cir. 1983). In order for a state habeas petitioner to prevail on a claim that an improper remarks marred his trial the asserted error must be one of constitutional magnitude. "This means that the prosecutorial remarks must be so prejudicial that they render the trial fundamentally unfair."

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 20 of 25

*Houston v. Estelle*, 569 F.2d 372, 378 (5th Cir. Tex. 1978); *citing Alvarez v. Estelle*, 531 F.2d 1319 (5th Cir. 1976).

None of the State's myriad references to Katrina possessed even the remotest bearing on Petitioner's guilt or innocence. Petitioner was not charged with contractor fraud or with otherwise procuring property from the victims through one ruse or another that factually depended on the damages sustained from Hurricane Katrina. Indeed, even the State acknowledged that Katrina "isn't really relevant to the guilt of innocence of the defendant." Nonetheless, Petitioner's trial counsel did not object to a single immaterial or inflammatory comment.

Petitioner's guilt was not so overwhelming as to be unattributable to the State's repeated attempts to engender sympathy for the victim's at the price of impartiality toward Petitioner. Petitioner was not identified by Ms. Parker; Mr. Blackwell emphatically testified that Petitioner was not present during the commission of the crime; and Petitioner was not found in possession of any of the stolen goods. For this reason, the State's repeated references to Hurricane Katrina played an important part in securing Petitioner's conviction. That Petitioner's trial counsel did not object to these prejudicial, inflammatory, and irrelevant lines of questioning or querulous opening and closing remarks proscribed meaningful review on appeal. Consequently, the trial court erred and habeas relief is warranted.

c.   *Failure to effectively represent Petitioner at Sentencing*

"The Sixth Amendment guarantees a defendant the right to have counsel present at all "critical" stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009), *quoting United States v. Wade*, 388 U.S. 218, 227-228, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). Sentencing is a "critical stage." *See e.g., Gardner v. Florida*,

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 21 of 25

430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977) ("The Sixth Amendment right to counsel extends to all critical phases of a criminal proceeding, including a sentencing hearing"); *Mempa v. Rhay*, 389 U.S. 128, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967) ("The time of sentencing is a critical stage in a criminal case"); *Boardman v. Estelle*, 957 F.2d 1523, 1525 (9th Cir. 1992) ("Sentencing is a critical stage of the criminal process"); *United States v. Fogel*, 829 F.2d 77 (D.C. Cir. 1987) ("It cannot be said often enough that sentencing is a critical phase of the criminal justice process.") A defendant's right to competent and effective representation has been extended to multiple offender proceedings and other penalty enhancement adjudications. *Chewning v. Cunningham*, 368 U.S. 443, 82 S. Ct. 498, 7 L. Ed. 2d 442 (1962) (a defendant has a constitutional right to the assistance of counsel at a habitual offender proceeding;) *see also State v. Dupas*, 670 So. 2d 667 (La.App. 3 Cir. 1996) (defendant has a right to be represented by counsel at sentencing.)

In Louisiana, sentencing errors of constitutional magnitude have been held *to not be cognizable* on post-conviction. *State v. Cotton*, 45 So. 3d 1030, 1031 (La. 2010); La. C.Cr.P. Art. 930.3. This exception—proscribing a defendant from seeking relief for his counsel's failure to act as "counsel" guaranteed by the Sixth and Fourteenth Amendments during the defendant's sentencing—appears to run contrary to the great weight of U.S. Supreme Court authority. "[T]he sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause. Even though the defendant has no substantive right to a particular sentence within the range authorized by statute, *the sentencing is a critical stage of the criminal proceeding at which he is entitled to the effective assistance of counsel* [emphasis added]." *Gardner,* 430 U.S. at 358.

A claim that a state has withheld a federal right may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 22 of 25

both independent of the merits of the federal claim and an adequate basis for the court's decision. *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001). Courts of this Circuit have held that La. C.Cr.P. Art. 930.3 and *Melinie* and *Cotton* are just such "independent and adequate" state rules to support the application of a procedural bar. *Harvey v. Cain*, 2012 U.S. Dist. LEXIS 84538 (E.D. La. Mar. 8, 2012). Nevertheless even where the state court has relied on independent and adequate state procedural rules in finding a claim defaulted, a habeas petitioner can avoid the procedural bar by "demonstrate[ing] either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999).

Petitioner was a potential fifth-time felony offender having picked up the first three (3) of his felony convictions on the same day in October 2005. His fourth conviction came two (2) years later in November 2007. As such, counsel was well aware that Petitioner was facing not merely the *possibility* of a life sentence if conviction but a certainty. Accordingly, the only cogent strategy that counsel could have mustered would be the request for a downward departure. Where the trial judge determines that the punishment mandated by the Habitual Offender Law makes no measurable contribution to acceptable goals of punishment or that the sentence amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime, he is duty bound to reduce the sentence to one that would not be constitutionally excessive. *Matthews*, 57 So. 3d at *6. Instead, counsel sat mute. He did not present mitigating witnesses, testimony, or allocution; he did not even question that State's expert witness at sentencing.

Nor should counsel's failures be deemed "harmless." Counsel gave neither the trial court nor this Court any record from which to conclude that a departure from the mandatory life sentence

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 23 of 25

was advisable. The failure of Counsel to present mitigating evidence was a fatal one: without adequate basis to evaluate Petitioner's redeeming qualifications and character, this Court's maximum sentence was not subjected to the counter-weight of zealous allocution and mitigation. Consequently, Petitioner's sentencing attorney was wholly ineffective and the lower court's Judgment was in error.

      E.  <u>Appellate Counsel was Ineffective</u>

A convicted defendant is entitled to competent and effective representation on appeal.  "This right to counsel [on appeal] is limited to the first appeal as of right." *Ross v. Moffitt*, 417 U.S. 600, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974). While an appellate attorney need not advance every argument, regardless of merit, urged by the defendant, appellate counsel must be available to assist in preparing and submitting a brief to the appellate court and must "play the role of an active advocate, rather than a mere friend of the court assisting in a detached evaluation of the appellant's claim." *See Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967); *Swenson v. Bosler*, 386 U.S. 258, 87 S. Ct. 996, 18 L. Ed. 2d 33 (1967); *see also State v. Touchet*, 642 So . 2d 1213 (La. 1994) (Holding that meaningful access to the courts includes a right to court appointed counsel on a first direct appeal as of right and effective assistance of counsel.)

To succeed on a claim of ineffective assistance of appellate counsel, a defendant  must satisfy the two-prong *Strickland* test. *Hernandez v. Thaler*, 463 Fed. Appx. 349, 357 (5th Cir. Tex. 2012); *citing Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000). Appellate counsel's performance is deficient where, given all the circumstances, it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Prejudice is demonstrated

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 24 of 25

where the petitioner shows that but for that objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *Ibid*. at 694.

Petitioner's was represented on appeal by the Louisiana Appellate Project. Petitioner's representation was woefully inadequate and constitutionally ineffective. Petitioner's appellate counsel raised just one (1) issue spanning only three (3) pages in an untimely appellate brief: that Petitioner's life sentence was constitutionally excessive. So grossly inadequate was Petitioner's appellate counsel's titular brief that Petitioner submitted his own *pro se* brief highlighting appellate issues of his concern. Unfortunately, the First Circuit refused to accept Petitioner's tardy *pro se* filings and his issues were never aired on direct review.

Petitioner's appellate counsel failed to raise salient issues such the trial court's denial of Petitioner's Motion to Suppress; the denial of counsel's request to back-strike juror no. 179, Christine Moorman, who conceded mid-trial to knowing a state-witness; the prosecutions repeated references to Hurricane Katrina; the use of Jason Blackwell's audio statement as substantive evidence of Petitioner's guilt; the use of hearsay evidence to establish Michelle Parker's out-of-court "identification" of Petitioner; the sufficiency of the evidence; or even trial counsel's defective performance. In refusing or failing to raise these viable appealable issues, appellate counsel wrought significant and irreparable injury upon Petitioner who was subsequently procedurally proscribed from seeking review on post-conviction of many of these issues.

F. Prosecutorial Misconduct

"Criminal defendants who are convicted as a consequence of prosecutorial misconduct will be afforded post-conviction relief where appropriate." *Knapper v. Connick*, 681 So. 2d 944 (La. 1996). In instances of alleged prosecutorial misconduct, the touchstone of due process analysis is

*Ray A. Brooks v. Burl Cain, Warden*
Memorandum in Support of
Petition for Writ of Habeas Corpus
Page 25 of 25

the fairness of the trial, not the culpability of the prosecutor. "The aim is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." *State v. Jones*, 791 So. 2d 622 (2001).  The standard is whether the prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643; 94 S. Ct. 1868; 40 L. Ed. 2d 431 (1974).

Petitioner herein repeats, re-alleges, and incorporates herein the claims previously raised above as they pertain to the misconduct of the State of Louisiana, namely, the use of the extra-judicial statements of Jason Blackwell as substantive proof of Petitioner's guilt and the repeated references to Hurricane Katrina, designed to inflame the sentiments of the jury and prejudice them against Petitioner. The State of Louisiana engaged in these blatantly improper and grossly inappropriate activities in an attempt to secure Petitioner's conviction in deprivation of Petitioner's due process rights as secured by the Louisiana and U.S. Constitutions.

## CONCLUSION

For the reasons described above and any others appearing to this honorable Court, Petitioner's conviction should be reversed.

Respectfully submitted,
**H2 LAW, LLC**

**/s/** *Justin Caine Harrell*
Justin Caine Harrell, Esq.
LSBA 31471
Attorneys for Ray A. Brooks
1100 Poydras Street, Suite 2900
New Orleans, Louisiana 70163
504-585-7329
504-324-0145 *facsimile*